IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PATRICK L. BLACK,                         )
                                          )
              Plaintiff,                  )
                                          )
                                          )        CIV-12-289-D
v.                                        )
                                          )
MICHAEL J. ASTRUE,                        )
  Commissioner of Social Security         )
  Administration,                         )
                                          )
              Defendant.                  )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his concurrent applications for disability insurance and

supplemental security income benefits under Title II and Title XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1382.  Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues.   The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

I. Background

In his applications protectively filed in September 2009 (TR 146-147, 140-151, 187,

188), Plaintiff alleged he last worked on February 13, 2009, and that he was disabled due to a herniated disc, a "torn" disc, a "neurological" impairment, "bad legs," "nerve problems," arthritis, and depression. (TR 192).  He stated he had previously worked as a heavy equipment truck driver, an oilfield roughneck, an oil rig "floor hand," and a truck company owner and operator. (TR 193, 201-206, 208-214).  Plaintiff described his usual daily activities in a report completed October 7, 2009, and Plaintiff's mother described Plaintiff's usual daily activities in a report completed October 23, 2009. (TR 215-223, 224-231).

Plaintiff's applications were denied on initial and reconsideration reviews. (TR 55-60).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson ("ALJ") on March 1, 2011. (TR 11-54).  During this hearing, Plaintiff and a vocational expert ("VE") testified.  Subsequently, the ALJ issued a decision on April 19, 2011, in which the ALJ found that Plaintiff had severe impairments due to disorders of the spine, affective disorder, and substance addiction disorder. (TR 64-73).  Despite these impairment, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination.  Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart,

331 F.3d 758, 760 (10th Cir. 2003).   The "determination of whether the ALJ's ruling is

supported by substantial evidence must be based upon the record taken as a whole.

Consequently, [the Court must] remain mindful that evidence is not substantial if it is

overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th

Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 416(i).   The Commissioner

follows a five-step sequential evaluation procedure to determine whether a claimant is

disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the

burden of establishing a prima facie case of disability. Id.   In this case, Plaintiff's claim was

denied at step five.   At the fifth and final step of the requisite sequential evaluation process,

the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual

functional capacity] . . . to perform work in the national economy, given her age, education

and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation

and citation omitted).

III. Analysis

Following the requisite sequential evaluation procedure, the ALJ found at step one

that Plaintiff had not worked since February 13, 2009, the date he alleged he became

disabled. (TR 66).   At step two, the ALJ found that Plaintiff had severe impairments due to

3

disorders of the spine, affective disorder, and substance addiction disorder. (TR 66). At step three, the ALJ considered the requirements of the listings for impairments deemed disabling *per se*, including Listing 1.00 (musculoskeletal system), Listing 12.04 (affective disorders), and Listing 12.09 (substance addiction disorders). The ALJ found that Plaintiff's severe impairments did not satisfy the requirements of the listings and that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment in the regulations. (TR 66-68).

In considering the severity of Plaintiff's mental impairments, the ALJ followed the evaluation procedure required by the regulations. See 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ reviewed the medical evidence, including the report of the consultative psychological examiner, Dr. Danaher, who evaluated Plaintiff on February 2, 2010. (TR 272-276). The ALJ also expressly considered the Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment completed by Dr. Massad, the agency's medical consultant. (TR 278-303).

The ALJ noted that he had given great weight to Dr. Massad's opinions concerning functional limitations arising from Plaintiff's mental impairments. The ALJ concluded that based on the medical evidence Plaintiff's mental impairments had resulted in "mild" restrictions in activities of daily living, "moderate" limitations in social functioning, "mild" difficulties in concentration, persistence, or pace, and "no" episodes of deterioration of extended duration. (TR 67-68).

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to

perform work at the light exertional level[1] with additional restrictions that he could "perform simple and some complex tasks; [could] relate to others on a superficial work basis, and [could] adapt to a simple and some complex work situations." (TR 68). In reaching the RFC determination, the ALJ gave "great weight" to the opinions of Dr. Massad and Dr. Bird, the state agency medical consultants, with respect to Plaintiff's work-related abilities and functional limitations. (TR71).

In light of the VE's responses to hypothetical questioning during the administrative hearing, the ALJ found that Plaintiff's impairments and resulting functional limitations prevented him from performing his previous jobs as a semi-truck driver, dump truck driver, floor work/well service worker, and heavy equipment operator. (TR 71-72). Adopting the VE's testimony concerning the availability of jobs for an individual with Plaintiff's RFC and vocational characteristics, the ALJ found at the fifth step that Plaintiff could perform other jobs available in the economy, including the jobs of laundry folder, small products II assembler, and electronics worker. (TR 72-73). In light of these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff alleges that the ALJ erred in making the step four RFC finding and the ultimate step five determination of nondisability because the ALJ did not adequately consider the combined effect of Plaintiff's mental and physical impairments. Specifically, Plaintiff

---

[1]Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

asserts that the record contains evidence of his "documented violent tendencies" that should have been considered in connection with the determination of his capacity to perform other work. Plaintiff's Opening Brief, at 9. Plaintiff contends that this error is significant because the VE testified that "in such a situation, where an individual cannot respond 'appropriately' to supervisors, co-workers or usual work situations, there would be no work available for such an individual." Id.

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work.    The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).  The ALJ must undertake a three-phase analysis at step four.  In the first phase, the ALJ must evaluate the claimant's residual functional capacity. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  In the second phase, the judge must determine the mental and physical demands of the claimant's past relevant work and make express findings. Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling 82-62, "Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," 1982 WL 31386, at 4 (1982).  In this phase, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Social Security Ruling 82-62, 1982 WL 31386, at 3; see Frantz, supra.  In the third phase, the ALJ must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase

one." Winfrey, 92  F.3d at 1023 (citations omitted).

At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

Before reaching the merits of Plaintiff's argument, it must be pointed out that Plaintiff has not accurately represented in his brief either the ALJ's questioning or the VE's response to that questioning.  At the administrative hearing, the ALJ posed two hypothetical questions to the VE in order to obtain testimony concerning the issue of the availability of jobs at the fifth step of the evaluation procedure.  The ALJ first asked the VE to assume an individual of the same age, educational achievement, and work experience as Plaintiff who could perform light work, "simple and some complex tasks," relate to others on a superficial basis, and adapt to a "simple and some complex" work situation. (TR 48-49).  In response to this question, the VE responded that such an individual could not perform Plaintiff's previous jobs but could perform the light, unskilled jobs of laundry folder, small products assembler II, and electronics worker. (TR 49-50).

In a second hypothetical question posed to the VE, the ALJ asked the VE to assume an individual who could perform sedentary work limited to walking no more than two blocks at a time, who could not understand, remember, or carry out even simple instructions, who could not respond appropriately to supervisors, coworkers, or usual work situations, and who could not deal with changes in a routine work setting. (TR 51).  The VE responded that no

7

jobs would be available for such an individual. (TR 51-52).

In his decision, the ALJ adopted the VE's testimony in response to the first hypothetical question which set forth the physical and mental work-related abilities included in the RFC finding.  The second hypothetical question addressed only the availability of jobs for a hypothetical individual, and this hypothetical appears to have been based on Plaintiff's subjective testimony concerning his physical and mental limitations.  The ALJ found that Plaintiff's subjective statements were not entirely credible and did not find that Plaintiff's impairments had resulted in the significant functional limitations included in the second hypothetical question.

Plaintiff asserts that the ALJ erred by failing to include in the RFC determination a limitation related to his "documented violent tendencies."  As support, Plaintiff relies on the report of the consultative neurological examiner, Dr. Wood.  Contrary to Plaintiff's assertion that the ALJ improperly "parsed" Dr. Wood's report, the ALJ's decision reflects his consideration of this report.  In fact, the decision contains an essentially verbatim recitation of this report. (TR 69-70, 254-255).  Dr. Wood noted that during Plaintiff's neurological evaluation conducted in September 2009, Plaintiff exhibited "threatening" and "very erratic" behavior leading Dr. Wood to conclude he could not treat Plaintiff. (TR 254-255).  Dr. Wood noted that Plaintiff's subjective history and the results of the examination were "quite inconsistent" and there was a "large amount of [subjective] overlay" exhibited by Plaintiff during the examination. (TR 255).

Other than Dr. Wood's notations concerning Plaintiff's behavior during the

examination, there are no other references in the medical record to similarly "threatening" behavior. (TR 254-255). Plaintiff testified at his hearing that although he had previously used "shoot[ing] guns in rapid fire" as a coping mechanism for "intense" pain, he no longer possessed any guns. (TR 28). Plaintiff further testified that he was "fine" so long as he regularly took his prescribed anti-depressant medication, but that he would "get violent" if he stopped taking the medication "for a week." (TR 28, 36). He did not describe any specific instances or indicate that "violent tendencies" prevented him from working.

There was no medical or nonmedical evidence of persistent "violent tendencies" that would impact Plaintiff's ability to work. Consequently, the ALJ did not err in failing to include in the RFC determination any work-related limitation due to "violent tendencies."

No physician found or intimated that Plaintiff was unable to work as a result of physical and/or mental impairments. Plaintiff's treating physician, Dr. Gnaegy, noted on June 15, 2010, that Plaintiff was not depressed and that he was "actually counseling some family and friends," that a neurological and psychiatric examination of Plaintiff were normal, and that Plaintiff declined a prescription for narcotic pain medication. (TR 351-353). In July 2010, Dr. Gnaegy noted that Plaintiff's urinalysis drug screen had been positive for the presence of methamphetamine and that no controlled substances would be prescribed for Plaintiff in the future. (TR 376). X-rays and magnetic resonance image ("MRI") testing of Plaintiff's hips and lumbar, cervical, and thoracic spines have not shown the presence of significant degenerative problems. (TR 319-322, 336, 418-422, 424). As the ALJ accurately pointed out in his decision, Plaintiff's complaints of hip and back pain have been treated

conservatively with medications.

Plaintiff's testimony during the hearing reflected that his daily activities were varied and included cooking meals for his mother and himself, performing household maintenance chores, mowing the yard with breaks, reading, watching television, grocery shopping, attending church, engaging in hobbies including knife sharpening and small engine repair, and visiting with friends and family. (TR 37-44). A neurosurgeon, Dr. Snell, examined Plaintiff in August 2010 and noted that Plaintiff complained of bilateral hip pain. However, Dr. Snell noted that Plaintiff exhibited no evidence of myelopathy or radiculopathy and a motor examination was stable. (TR 424).

Dr. Danaher, a consultative psychological examiner, noted that in his examination of Plaintiff conducted in February 2010 Plaintiff reported he had injured his back while remodeling a bathroom. (TR 272). Dr. Danaher noted that Plaintiff exhibited no memory, attention, or concentration deficits and that based on the results of a mental status examination Plaintiff was capable of understanding, remembering, and carrying out simplex and complex instructions in a work-related environment. (TR 274-276).

Dr. Massad, an agency medical consultant, opined that based on his review of the record Plaintiff had "sufficient concentration and memory to do simple, repetitive tasks" although he would be limited in his ability to work in the general public. (TR 290). Dr. Bird, another agency medical consultant, opined that based on his review of the record Plaintiff was capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing about 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. (TR 297). Dr.

Spencer, a physician who treated Plaintiff in a hospital emergency room in July 2010 for lower back pain reportedly caused by lifting a box noted that Plaintiff's pain improved with medications and that at the time of his discharge Plaintiff could perform all activities except "heavy lifting." (TR 327-329).

There is substantial evidence in the record to support the ALJ's RFC finding. The RFC finding is consistent with the opinions of the state agency consultants and the medical evidence in the record. The ALJ appropriately found that Plaintiff's subjective statements concerning his limitations posed by his back impairment and depressive disorder were not fully supported by the medical evidence in the record, including the results of x-ray and MRI testing and the reports of the consultative neurological, psychological, and orthopedic consultants. Therefore, the Commissioner's determination should be affirmed.


<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment should enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ February 25th _____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____5th_____ day of ____February_____, 2013.


_____
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE